[Civ. No. 21303.   Second Dist., Div. Three.   Aug. 8, 1956.]

ELIZABETH ANN DETTAMANTI, a Minor, etc., Appellant, v. THE LOMPOC UNION SCHOOL DISTRICT OF SANTA BARBARA COUNTY et al., Respondents.

W. P. Butcher and Frank R. Crandall for Appellant.

Marion A. Smith for Respondents.

SHINN, P. J.—Elizabeth Ann Dettamanti, a minor, by her father as her guardian ad litem, instituted the present action against the Lompoc Union School District of Santa Barbara County and August Anderson. She sued for compensation for injuries received through the allegedly negligent conduct of the defendants. She alleged that she was 8 years of age, was a passenger in a school bus of the district operated by Anderson; that the bus was brought to a stop in the city of Lompoc, the door of the bus was opened and she was directed to leave the bus; that the bus was headed north, she lived on the westerly side of the street; that Anderson knew she would have to cross the street; that two automobiles were stopped behind the bus, one being driven by a minor girl; that he permitted her to enter the street unescorted; that she was struck by the automobile driven by said young girl and that the conduct of Anderson in failing to warn her or to escort her across the street was negligent and was the proximate cause of serious injuries which she received.

The accident occurred on the 28th day of October, 1953. Plaintiff's father was appointed her guardian ad litem August 10, 1954. On June 28, 1954, plaintiff's father filed on her behalf with the clerk of the school district and presented to Anderson a verified written claim concerning the fact and details of the accident; the claim was rejected by the board of trustees of the district on or about July 12, 1954, by failure to take any action thereon.

Defendants filed a general demurrer which also specified that the action was barred by the provisions of sections 1980, 1981 and 2003 of the Government Code and section 1007 of the Education Code. The demurrer was sustained without leave to amend and judgment of dismissal was entered. Plaintiff appeals. The sole ground of the court's ruling was that plaintiff had failed to file a verified claim with the defendant school district and defendant Anderson within the time provided by section 1007 of the Education Code and sections 1981 and 2003 of the Government Code and had failed to allege sufficient facts to excuse strict compliance with those sections.[1]

---

[1] "§ 1007. [Ed. Code.] The governing board of any school district is liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because

The facts alleged upon which plaintiff relies to excuse her failure to file a claim in time are the following: During the month of November, 1953, Henry Dettamanti consulted with Lawrence C. Grossman, an attorney at law, practicing at Lompoc, for the purpose of employing him to represent plaintiff as her attorney in seeking compensation for her injuries and stated to Grossman the circumstances in which plaintiff had suffered her accident; that said Grossman was at the time a deputy district attorney of Santa Barbara County and prior to Henry's consultation with him had fully investigated the accident and examined the written reports of the police officers of the city of Lompoc who had investigated the accident; that prior to the time of said consultation said Grossman, as deputy district attorney, had filed a criminal complaint against the driver of the automobile that struck plaintiff; that he knew the school bus was owned by the

of the negligence of the district, or its officers, or employees in any case where a verified claim for damages has been presented in writing and filed with the secretary or clerk of the school district within ninety (90) days after the accident has occurred. The claim shall specify the name and address of the claimant, the date and place of the accident, and the extent of the injuries or damages received.''

''§ 1980. [Gov. Code]

''(a) '*Person*' includes any pupil attending the public schools of any school or high school district.

''(b) [*Public property*] In addition to the definition of public property as contained in Section 1951, 'public property' includes any vehicle, implement or machinery whether owned by the State, a school district, county, or municipality, or operated by or under the direction, authority or at the request of any public officer.

''(c) 'Officer' or 'Officers' includes any deputy, assistant, agent or employee of the State, a school district, county or municipality acting within the scope of his office, agency or employment.''

''§ 1981. [Gov. Code] Whenever it is claimed that any person has been injured or any property damaged as a result of the negligence or carelessness of any public officer or employee occurring during the course of his service or employment or as a result of the dangerous or defective condition of any public property, alleged to be due to the negligence or carelessness of any officer or employee, within 90 days after the accident has occurred a verified claim for damages shall be presented in writing and filed with the officer or employee and the clerk or secretary of the legislative body of the school district, county or municipality, as the case may be. In the case of a State officer the claim shall be filed with the officer and the Governor.

''§ 2003. [Gov. Code] A cause of action against an employee of a district, county, city or city and county for damages resulting from any negligence upon the part of such employee while acting within the course and scope of such employment shall be barred unless a written claim for such damages has been presented to the employing district, county, city, or city and county in the manner and within the period prescribed by law as a condition to maintaining an action thereof against such governmental entity.''

Lompoc Union School District and that August Anderson was in the employ of the district as the bus driver and he knew that when the bus was stopped to permit plaintiff to alight Anderson did not at any time leave the bus or assist or escort plaintiff across the street and said Grossman further knew from the police reports that Anderson was aware of the fact at that time that there were two automobiles stopped behind the bus and that the driver of the first automobile was a minor girl of tender years. It was alleged that said Grossman did not inform Henry that a valid cause of action existed against the school district or against Anderson nor did he inform Henry that he might possibly have such cause of action; he did not inform Henry that he should file a verified written claim against the school district nor did he mention the term "verified written claim" nor the necessity for filing same in order to protect the rights of the minor; he did not inform Henry that he should seek other counsel for the reason that he, Grossman, was a deputy district attorney and as such legally obligated to represent the school district and that, therefore, he could not represent Henry or plaintiff in any claim they might have against the school district. Nevertheless, said Grossman agreed to and did undertake the representation of Henry and plaintiff and agreed to attempt to effectuate a recovery from the owner of the automobile; that within 90 days after the happening of the accident the attorney effected a recovery from the owner of the automobile in the amount of $139 of which he retained $34.75 for his fee and remitted the balance to Henry; that the settlement on behalf of the minor was not approved by any court; that at no time while said Grossman was representing Henry and his daughter did Henry know or realize that the daughter had a valid cause of action or even a probable or possible cause of action against the school district and Anderson; at the suggestion of friends Henry later consulted another attorney after the expiration of 90 days following the accident and was advised by said attorney that any action against the school district was barred for failure to file a claim. The claim was filed later when plaintiff engaged the services of her present counsel.

In ruling upon the demurrer the trial judge referred to *Farrell* v. *County of Placer*, 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]; *Cruise* v. *City & County of San Francisco*, 101 Cal.App.2d 558 [225 P.2d 988], and commented that in all the recent cases in which delay in filing a claim was held

excusable some governmental agency or its representative had prevented the filing of a claim in time by some affirmative action. From the court's memorandum filed at the time of the ruling we learn that the court was of the opinion that it was advisable that "the very interesting question of law herein involved be placed before the Appellate Court for its determination," before the parties should be required to incur the expenses of a trial.

The leading case on the subject is *Farrell* v. *County of Placer, supra,* 23 Cal.2d 624, 630, in which the court stated: "Although it has been repeatedly held that compliance with the appropriate claim statute is mandatory and an essential requisite to plaintiff's cause of action, nevertheless the time element with respect to the filing of the claim is essentially procedural in nature [citations] ; and is analogous to a statute of limitation. [Citations.] It has been intimated by some authorities that the claim statute is the measure of the power of the governmental agency in paying the tort claims involved, and hence any deviation from that procedure cannot be dispensed with by waiver, estoppel, or otherwise. That conclusion, at least with respect to the time of filing the claim, is not supported by the statute or reason. The various reasons advanced for the adoption of the claim statute, that is, to afford the agency an opportunity to investigate the merits of the claim, and to arrive at a settlement, thus avoiding litigation, are not inconsistent with the view that the statute is not the measure of the power. From the standpoint of the agency it has general power to pay claims arising from the liability imposed by the public liability act. Hence the filing of the claim within ninety days, while mandatory upon the claimant and a condition precedent to his cause of action, is nothing more than a procedural requirement as to the agency, which, as to the claimant, may be excused by estoppel." Other cases are: *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419 [260 P.2d 55], where plaintiff filed a signed copy of the claim with the clerk of the board of supervisors, rather than the notarized original, having filed the original with the city controller; *Mendibles* v. *City of San Diego,* 100 Cal.App.2d 502 [224 P.2d 42], where plaintiff filed the claim with the city auditor instead of the city clerk upon the advice of the mayor of San Diego; *Schulstad* v. *City & County of San Francisco,* 74 Cal.App.2d 105 [168 P.2d 68], where the same act which injured plaintiff made him mentally incompetent to file a claim for some time beyond the allow-

able period; *Tyra* v. *Board of Police etc. Commrs.*, 32 Cal.2d 666 [197 P.2d 710], where plaintiff failed to file a claim for a pension in reliance on statements by defendant and its attorneys to the effect that he was ineligible for a pension while he received workmen's compensation; *Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346 [159 P.2d 24], where plaintiff was told by the hospital, the insurance carrier and the employer to wait until her illness had been more fully investigated; *Lorenson* v. *City of Los Angeles*, 41 Cal.2d 334 [260 P.2d 49], where plaintiff was illegally suspended from the police force on unsubstantiated charges which he thought were legal charges, and where he relied on his superior's statements that he would not lose any salary and should wait until criminal proceedings against him were disposed of before making a claim for back salary; *Cruise* v. *City & County of San Francisco, supra,* 101 Cal.App.2d 558, where plaintiff gave a full report, including requested documents to defendant, and received a notice to file a claim by 4 p. m. on a certain day, which notice arrived after 4 p. m. on the last day for filing a claim. Here plaintiff was also told the case would be settled, the court remarking that although there was no duty to tell plaintiff to secure an attorney and to file a claim, there was a duty not to intentionally mislead her.

In *Benner* v. *Industrial Acc. Com., supra,* 26 Cal.2d 346, 349, the court said: "Where, as here, the delay in commencing action was induced by the conduct of the party sought to be charged the latter may not invoke such conduct to defeat recovery. [Citations.] An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, 'it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' [Citations.] In *Adams* v. *California Mut. B. & L. Assn.*, 18 Cal.2d 487 [116 P.2d 75], it was said at page 488: 'It is well settled that a person by his conduct may be estopped to rely upon these defenses. [Citations.] Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed by him as a defense. [Citations.] . . .' "

It is true that the present facts are unique in that there was no affirmative representation or action on the part of any representative of the school district with respect to the filing of a claim, but we are of the opinion that under the

facts pleaded in the complaint affirmative action was not necessary in order to give rise to an estoppel. ▮ The basis for an estoppel may be found in the failure of the party sought to be estopped to speak when he is under a duty to speak as well as in his speaking falsely and in a manner which tends to deceive. The conduct of the party sought to be estopped must be examined in order to determine whether there was a breach of duty toward the party who claims to have relied upon the conduct. Silence, when there is a duty to speak, as well as affirmative assertions, may result in inexcusable deception. In the other cases in which it was held that the facts supported the claim of estoppel the representatives and other persons who acted affirmatively had no duty to advise the claimant with respect to the filing of a claim; their duty was to refrain from volunteering statements calculated to deceive the claimant. So we inquire whether plaintiff's failure to file a claim in time resulted from some breach of duty on the part of the school district with respect to the necessity therefor.

Section 1010 of the Education Code imposes upon the district attorney of the county in which a school district is located a duty to defend without fee or other charge the district in any suit brought for injury to any pupil for any cause. Section 24100, Government Code, provides: "Whenever the official name of any principal officer is used in any law conferring power or imposing duties or liabilities, it includes deputies." The defendants do not contend that Attorney Grossman did not bear the same relationship to the school district and Anderson as that of his principal but they say the district attorney only becomes the legal representative of the district and its officer if suit has been filed against them and he has been directed to defend it. They also refer to section 2001 of the Government Code which makes it the duty of the attorney for "the State, district, county, municipality, or other public or quasi-public corporation" to act as counsel in defense of any suit brought against any officer thereof "unless provision has been made for the employment of other counsel in connection therewith" involving injuries due to the negligence of such officer in the course of his service or employment. They say that Anderson, being an officer (Gov. Code, § 1980), was not represented by the district attorney or his deputy because no suit had been filed. Therefore it is argued that in his consultations with Dettamanti, Grossman was not a representative of the school district or Anderson

and his acts or omissions were not those of the district or Anderson. We think this line of argument is entirely too narrow and we cannot adopt it. ■ The relation of the district attorney to his school district and an accused officer is akin to that of a private attorney who is acting under a general retainer to act for his client in matters of a designated class. ■ The district attorney has a duty to represent the district in personal injury damage suits filed against it and, unless he is excused, to represent an accused officer. He has no right to refuse to act. It seems to us unreasonable to argue that his duty begins when suit is filed and that up to that time he may act freely in the private employment of one who has a real or potential damage claim against the district and its officer and that in so acting the district or the officer has no claim upon his loyalty as their attorney. Attorney Grossman had a duty to advise Dettamanti as to plaintiff's legal rights. This included a duty to weigh the facts with respect to the conduct of Anderson in order to determine whether there was any substantial basis for a claim of negligence on his part in the performance of his duties for the district. In accepting employment by Dettamanti he placed himself in the impossible position of having two masters with conflicting interests. Dettamanti was in his hands. He could not advise Dettamanti that plaintiff had a substantial or a possible claim against the school district or Anderson nor could he advise him that plaintiff had none. There was no escape from a duty to weigh the facts with respect to possible liability of the defendants, and that fact alone rendered it impossible for the deputy to give any advice in the matter, or to act as plaintiff's attorney. It was his plain duty to refuse to act and to advise Dettamanti to seek other counsel. But he did accept the employment, with results that are all too clear. He avoided the matter of the possible liability of the defendants and undertook to prosecute a claim against the owner of the automobile. As a deputy district attorney he caused a criminal complaint to be filed against the driver and he made a settlement with the owner. He later caused the criminal action to be dismissed, although it is conceded that the dismissal was not in consideration of the settlement. His silence as to any possible liability of the defendants and the action he took against the owner of the car was taken by Dettamanti as the equivalent of advice that no valid claim against the defendants existed. Dettamanti so understood it and upon that understanding he acted to his detriment. It is not charged that

Grossman was conscious of any breach of duty. It is immaterial whether he was of the opinion there was no basis for liability of the school district.

█ Where there is a duty of loyalty to different clients it is impossible for an attorney to advise either one as to a disputed claim against the other. (Rules of Professional Conduct, State Bar of California, rule 7, 33 Cal.2d 29, 30; *Anderson* v. *Eaton,* 211 Cal. 113 [293 P. 788]; *Hammett* v. *McIntyre,* 114 Cal.App.2d 148 [249 P.2d 885].)

█ Where the conduct in question is against public policy the courts will not hesitate to condemn it. They will not inquire into the fairness or unfairness of the transaction, nor listen to protestations of good intentions nor entertain other excuses in justification of the forbidden conduct. (*Wickersham* v. *Crittenden,* 93 Cal. 17, 29 [28 P. 788]; *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 352, 364-366 [78 P. 550]; *Estate of Boggs,* 19 Cal.2d 324, 333 [121 P.2d 678]; *Newell-Murdoch Realty Co.* v. *Wickham,* 183 Cal. 39, 45 [190 P. 359]; *Estate of Howard,* 133 Cal.App.2d 535, 540-541 [284 P.2d 966]; *Highland Park Inv. Co.* v. *List,* 42 Cal. App. 752, 754-755 [184 P. 48]; *Dean* v. *Shingle,* 198 Cal. 652, 658 [246 P. 1049, 46 A.L.R. 1156]; *Sims* v. *Petaluma Gas Light Co.,* 131 Cal. 656, 659 [63 P. 1011].)

█ Defendants are confronted by the stark fact that Dettamanti allegedly failed to file a claim on behalf of his daughter within the prescribed time solely by reason of a breach of duty on the part of the attorney for the defendants to give him complete and unbiased advice. That should end the inquiry. Public policy cannot be defeated by the tenuous claim that the attorney temporarily removed himself from his relationship to the school district and its officer. He could not do that; the law regards the shifting of loyalty and allegiance from one of two adverse interests to the other as impossible, and will have none of it. Defendants are bound by the conduct of the deputy district attorney. They cannot be heard to say that the attorney was not acting on their behalf and in their interests while he was also acting as attorney for Dettamanti and plaintiff. The presumption of law is to the contrary and it must be deemed conclusive. We conclude that the facts alleged in the complaint were sufficient to estop defendants from relying upon the delay in the filing of a claim on plaintiff's behalf.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.